KENNETH MOORE, APPELLEE, v. NATIONAL DEVELOPMENT OF OMAHA, INC., APPELLANT.

ROBERT MEHRING, APPELLEE, v. NATIONAL DEVELOPMENT OF OMAHA, INC., APPELLANT.

ROBERT MEHRING, APPELLEE, v. NATIONAL DEVELOPMENT OF DOUGLAS COUNTY, INC., APPELLANT.

KENNETH MOORE, APPELLEE, v. NATIONAL DEVELOPMENT OF DOUGLAS COUNTY, INC., APPELLANT.

125 N. W. 2d 9

Filed November 29, 1963. Nos. 35492, 35493, 35494, 35495.

Crossman, Barton & Norris, for appellants.

Crawford, Garvey, Comstock & Nye, for appellees.

Heard before WHITE, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

BOSLAUGH, J.

These cases originated in the district court for Douglas County, Nebraska, as separate actions for an accounting. They were consolidated for trial in that court. The district court found generally for the plaintiff in each action. The defendants' motions for new trial were overruled and the actions were brought to this court for review.

In this court the actions were consolidated for briefing and argument. There is but one bill of exceptions and the evidence may be considered in any of the actions in which it is applicable. We dispose of the appeals in the four actions by this opinion.

There are two plaintiffs, Kenneth Moore and Robert Mehring, and two defendants, National Development of Omaha, Inc., and National Development of Douglas County, Inc. The defendants are corporations engaged in the business of developing real estate. The plaintiffs formerly were employed as salesmen and managers by the defendants.

The contracts of employment, which were oral, provided that the plaintiffs were to be compensated upon a commission basis. Where property was sold upon an installment basis, a part of the commission due the salesman would be paid from the downpayment. The balance of the commission due the salesman, and the commission due the manager, would be paid from the installment payments as they were received by the defendant. The parties are in agreement as to the amounts due the plaintiffs from the defendants except that the defendants claim that the plaintiffs have forfeited any unpaid commissions by reason of provisions in the contracts of employment providing that an employee who voluntarily leaves the employment or who enters into direct competition with the defendants forfeits unpaid commissions. The defendants seek recovery of commissions which they alleged were paid or credited to the plaintiffs by mistake. A counterclaim which the defendant National Development Company of Omaha, Inc., asserts against the plaintiff Moore will be discussed separately.

Moore was employed as a salesman from July 1957 until November 1958. He was employed as a manager from January 1959 until March 1960. From March 1960 until August 1961, Moore was employed by Western Securities Company. In August 1961, Moore was employed by the American Development Company, a corporation which was engaged in the business of developing real estate in a similar manner to that of the defendants.

Mehring was employed as a salesman from May 1958 until November 1958, and as a manager from March

1960 until March 1961. After his employment by the defendants had been terminated, Mehring was employed by the American Development Company.

The defendants contend that the evidence shows that plaintiffs agreed to the forfeiture provisions at the time they were hired, or that they agreed to the forfeiture provisions at a later date. The evidence relating to this question is, for the most part, in irreconcilable conflict. When the evidence is in irreconcilable conflict this court will consider the fact that the trial court observed the witnesses and their manner of testifying, and must have accepted one version of the facts rather than the opposite. Beebe v. Reichert, 172 Neb. 172, 108 N. W. 2d 804.

Both Moore and Mehring were originally hired by Richard L. Erkenbeck. Erkenbeck did not recall what he told Moore, but testified that he explained the forfeiture provisions to Mehring. Mehring denied that Erkenbeck said anything about forfeiture of commissions.

The defendants produced evidence that the forfeiture of commissions was discussed at conferences and training sessions held at the defendants' office. Bill Hale, a former salesman for the defendants at Omaha, testified that he was present during a conversation in which Robert Sabinske, the president of the defendants, talked with Moore about the forfeiture of commissions. Sabinske also testified that he had discussed the forfeiture of commissions with the plaintiffs on several occasions.

The plaintiffs testified that they had never been advised about the forfeiture of commissions, and that they, as managers, had never talked to any of the salesmen about the forfeiture of commissions. The plaintiffs produced several other salesmen who testified that they had not been advised about the forfeiture of commissions.

Any provision in a contract of employment which may result in a forfeiture of the compensation earned by the employee is of extreme importance to both parties. This is especially true where the entire compen-

sation consists of commissions paid upon sales, most of which are made upon an installment basis, and payable over a period of several years following the sale. Such a provision must be understood by both parties and be agreed upon in order to be enforceable.

In January 1961, Sabinske prepared a letter or memorandum (exhibit 7), which was addressed to "ALL OFFICES—ALL PERSONNEL." The memorandum was devoted largely to a discussion of the forfeiture of commissions, also referred to as debit. The memorandum stated that, in the future, commissions would not be paid to ex-employees except under certain circumstances. The memorandum then stated: "In all cases, the company will decide whether debit is to or not to be paid to no longer employed people. This is the method that was originally set up when debit was first offered as a bonus but down through the years it has grown into something else and in many cases, the company was bitten severely with the debit proposition. This is rather a difficult thing to explain in a letter but I wanted to get it on the record at the beginning of the new year. We have talked about it for years but have not outlined it on paper for everybody.

"Make a copy of this and keep it in your office so that all new employees may read and sign, as well as current employees. I will be happy to discuss it with any of you personally when I am at your office in case I have not made the point clear. In case any employee is not happy with this arrangement, he may resign at this time and receive past debit accrued. This should keep anyone from feeling that they have been sacked up in the past and that we may be trying to take advantage of him. It will also allow us all to get off to a fresh start with a clear understanding."

The memorandum was received in the office of the defendants in Omaha in January or February of 1961. Mehring made no sales after the memorandum was received, and his employment was terminated on March

23, 1961. Moore had left the employment of the defendants during the previous year.

We think that exhibit 7 shows that the defendants realized that confusion and misunderstanding existed among its employees concerning the forfeiture of commissions. The purpose of exhibit 7 was to establish a policy which, in effect, amounted to a new or different policy. The fact that the defendants extended to each employee the right to resign at that time and receive past debits accrued suggested that the defendants thought that it would be unfair to attempt to enforce the policy against any employee without his further assent.

From our examination of the record we conclude that the evidence does not establish that the contracts of employment between the plaintiffs and the defendants provided for the forfeiture of unpaid commissions of an employee who voluntarily left the employment of the defendants or who entered into direct competition with the defendants.

The counterclaim of the National Development Company of Omaha, Inc., against Moore arises out of the purchase of 800 feet of 4-inch plastic pipe in April 1959. Apparently, the defendants installed water service lines on the property which they sold when the service was required by their customers. The defendant contends that the purchase of the pipe was not authorized and that, contrary to the instructions of Sabinske, the pipe was left in the open and a large quantity of it was damaged or carried away.

Moore left the employment of the defendant in March 1960. If the defendant had any claim against Moore, it existed at that time. Yet, nothing was said about the claim until more than 2 years later. Moore continued to receive commissions from the defendants until September 1961. Sabinske admitted that nothing was said about the claim concerning the pipe until the defendant's answer was filed in this litigation in December 1962.

We conclude that the National Development Company of Omaha, Inc., is not entitled to recover upon its counterclaim against Moore.

The judgment of the district court in each action is correct and is affirmed.

AFFIRMED.